UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
KALAMAZOO DIVISION

ASHLEY WALDORF and
RYAN WALDORF,

    Plaintiffs,

v.                                                            CASE NO.:

BANK OF AMERICA, N.A.,

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW, Plaintiffs, Ashley Waldorf and Ryan Waldorf (collectively "Plaintiffs), by and through the undersigned counsel, and sues Defendant, BANK OF AMERICA, N.A., and in support thereof respectfully alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").

## INTRODUCTION

1.    The TCPA was enacted to prevent companies like BANK OF AMERICA, N.A. (hereinafter "Defendant") from invading American citizen's privacy and to prevent abusive "robo-calls."

2.    "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

3.    "Senator Hollings, the TCPA's sponsor, described these calls as 'the **\*1256** scourge of modern civilization, they wake us up in the morning; they interrupt our

1

dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

4. According to the Federal Communications Commission (FCC), "Unwanted calls are far and away the biggest consumer complaint to the FCC with over 200,000 complaints each year – around 60 percent of all the complaints…Some private analyses estimate that U.S. consumers received approximately 2.4 billion robocalls per month in 2016." https://www.fcc.gov/about-fcc/fcc-initiatives/fccs-push-combat-robocalls-spoofing.

## JURISDICTION AND VENUE

5. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA.

6. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC*, S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

7.     The alleged violations described herein occurred in Kalamazoo County, Michigan. Accordingly, venue is appropriate with this Court under 28 U.S.C. §1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

8.     Plaintiffs are natural persons, and citizens of the State of Michigan, residing in Kalamazoo County, Michigan.

9.     Plaintiffs are the "called party(ies)." See *Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014).

10.    Defendant is a corporation which was formed in Delaware with its principal place of business located at 100 North Tryon Street, Charlotte, North Carolina 28255 and which conducts business in the State of Michigan.

11.    Defendant called the Plaintiffs approximately five hundred (500) times in an attempt to collect a debt.

12.    Upon information and belief, some or all of the calls Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer); and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

13. Plaintiffs will testify that they knew it was an autodialer because of the vast number of calls they received and because they heard a pause when they answered their phones before a voice came on the line from Defendant.

14. Plaintiffs will also testify that they knew it was an autodialer because they heard a computerized voice when they answered a phone call from Defendant, only after Plaintiffs announced there presence on the phone line did the computer transfer the Plaintiffs to a human being.

15. Plaintiffs believe the calls were made using equipment which has the capacity to store numbers to be called and to dial such numbers automatically.

16. Plaintiff, ASHLEY WALDORF (hereinafter Mrs. Waldorf), is the subscriber, regular user and carrier of the cellular telephone number (269) ***-8527, and was the called party and recipient of Defendant's calls.

17. Plaintiff, RYAN WALDORF (hereinafter Mr. Waldorf), is the subscriber, regular user and carrier of the cellular telephone number (269) ***-4244, and was the called party and recipient of Defendant's calls

18. Defendant placed an exorbitant number of automated calls to Mrs. Waldorf's cellular telephone (269) ***-8527, in an attempt to collect on a debt.

19. Defendant placed an exorbitant number of automated calls to Mr. Waldorf's cellular telephone (269) ***-4244, in an attempt to collect on a debt.

20. On several occasions over the last year, Plaintiffs instructed Defendant's agent(s) to stop calling their cellular telephones.

Case 1:19-cv-00060-PLM-PJG   ECF No. 1 filed 01/24/19   PageID.5   Page 5 of 9

21. On or about June of 2018, Mrs. Waldorf communicated with Defendant from her aforementioned cellular telephone number and instructed Defendant's agent to cease calling.

22. On or about June of 2018, Mr. Waldorf communicated with Defendant from his aforementioned cellular telephone number and instructed Defendant's agent to cease calling.

23. Mrs. Waldorf told the Defendant's agent/representative that she was working with an attorney to take care of the debt and that she wanted to the calls from the Defendant to stop.

24. Mr. Waldorf simply stated to the Defendant's agent/representative: "please stop calling."

25. Additionally, in June of 2018, the Plaintiffs faxed letters to the Defendant indicating that they wanted the calls to stop.

26. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice to individuals just as they did to Plaintiffs' cellular telephones in this case.

27. Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, just as they did to the Plaintiffs' cellular telephones in this case, with no way for the consumer, or Defendant, to remove the number.

28. Defendant's corporate policy is structured so as to continue to call individuals like the Plaintiffs, despite these individuals explaining to Defendant they do not wish to be called.

29. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this Complaint.

30. Defendant has numerous complaints against it across the country asserting that its automatic telephone dialing system continues to call despite being requested to stop.

31. Defendant has had numerous complaints against it from consumers across the country asking to not be called, however Defendant continues to call these individuals.

32. Defendant's corporate policy provided no means for Plaintiffs to have their numbers removed from Defendant's call list.

33. Defendant has a corporate policy to harass and abuse individuals despite actual knowledge the called parties do not wish to be called.

34. Not one of Defendant's telephone calls placed to the Plaintiffs were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

35. Defendant willfully and/or knowingly violated the TCPA with respect to the Plaintiffs.

36. From each and every call placed without express consent by Defendant to Plaintiffs' cellular telephones, Plaintiffs suffered the injury of invasion of privacy and the intrusion upon their right of seclusion.

37. From each and every call without express consent placed by Defendant to Plaintiffs' cellular telephones, Plaintiffs suffered the injury of the occupation of their cellular telephone line and cellular phone by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls while the phone was ringing from Defendant's call.

38. From each and every call placed without express consent by Defendant to Plaintiffs' cellular telephones, Plaintiffs suffered the injury of unnecessary expenditure of their time. For calls they answered, the time they spent on the call was unnecessary as they repeatedly asked for the calls to stop. Even for unanswered calls, Plaintiffs had to waste time to unlock their phones and deal with missed call notifications and call logs that reflect the unwanted calls. This also impaired the usefulness of these features of Plaintiffs' cellular telephones, which are designed to inform the user of important missed communications.

39. Each and every call placed without express consent by Defendant to Plaintiffs' cellular telephones was an injury in the form of a nuisance and annoyance to the Plaintiffs. For calls that were answered, Plaintiffs had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiffs had to waste time to unlock the phone and deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features of Plaintiffs' cellular telephones, which are designed to inform the user of important missed communications.

40. Each and every call placed without express consent by Defendant to Plaintiffs' cellular telephones resulted in the injury of unnecessary expenditure of Plaintiffs' cellular telephones' battery power.

41. Each and every call placed without express consent by Defendant to Plaintiffs' cellular telephones where a voice message was left which occupied space in Plaintiffs' phones or network.

42. Each and every call placed without express consent by Defendant to Plaintiffs' cellular telephones resulted in the injury of a trespass to Plaintiffs' chattel, namely their cellular phones and their cellular phone services.

43. As a result of the calls described above, Mrs. Waldorf suffered an invasion of privacy. Mrs. Waldorf was also affect in a personal and individualized way by stress, anxiety, and annoyance.

44. As a result of the calls described above, Mr. Waldorf suffered an invasion of privacy. Mr. Waldorf was also affect in a personal and individualized way by annoyance and frustration.

### COUNT I
**(Violation of the TCPA)**

45. Plaintiffs fully incorporate and re-allege paragraphs one (1) through forty-four (44) as if fully set forth herein.

46. Defendant willfully and/or knowingly violated the TCPA with respect to Plaintiffs, specifically for each of the auto-dialer calls made to Plaintiffs' cellular telephones after Plaintiffs notified Defendant that Plaintiffs wished for the calls to stop

47. Defendant repeatedly placed non-emergency telephone calls to Plaintiffs' cellular telephones using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiffs' prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiffs respectfully demand a trial by jury on all issues so triable and judgment against BANK OF AMERICA, N.A. for statutory damages, punitive damages, actual damages, treble damages, enjoinder from further violations of these parts and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/ Jason R. Derry, Esquire*
Jason R. Derry, Esquire
Florida Bar No.: 0036970
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Telephone: (813) 223-5505
Facsimile: (813) 257-0577
jderry@ForThePeople.com
jkneeland@ForThePeople.com
*Attorney for Plaintiff*